okay mr. Trump or aired in denying officer Casanova's qualified immunity in the face of audio and visual evidence coming from officer Casanova's body aggressive movement both in language and body movement by a possible suspect of a violent assault that had just occurred minutes before the trial watched that video and it doesn't clearly show anything to me maybe you better be pretty precise about what it shows it's only how many seconds long anyway not not very long right at least inside the house expression less than five five seconds that this actually occurs but the trial court focused on whether there was a material fact issue as to whether the Appley Snowden quote brandished a weapon while recognizing that he did have an object in his right hand at his waistband when he suddenly rose to confront officer Casanova at the front in fact in this court in Salazar v. Limon a case which is dated in 2016 and therefore clearly established law in this circuit held that an officer that's confronting a suspect that makes a sudden movement towards a police officer leading the police officer to reasonably believe that the suspect is about to response to that occurrence even though a weapon is not what is it that would have indicated that he was about to reach for a weapon when he suddenly rose from the couch runner he raises his right hand to his waistband and he clearly is in the grasp of an object that the trial court even identifies as a shiny object officer Casanova seconds after he retreated to the street after the incident occurred immediately told his fellow officers that he saw a gun and within two minutes thereafter he called the dispatcher and reported that he saw a nine millimeter. I thought the record indicated that Casanova acknowledged that Snowden never pointed a gun in his direction and also Casanova testified that when he, Casanova, began firing Snowden was no longer walking toward him. Are those accurate representations from the record? I believe that in the split second you know changing circumstances that what actually happened is that when Mr. Snowden suddenly rises and uses aggressive language and uses body movements to reach for an object at his to move towards officer Casanova you know saying who the fuck is this and then he starts to move to his right in an attempt to flee to the rear of the house and when that occurs officer Casanova tells him show me your fucking hands part of the language and Mr. Snowden does not stop or comply with the directive and keeps moving towards the rear of the house. Okay well when I ask you the question the first part I referred to is Casanova acknowledges that Snowden never pointed a gun in his direction is my question is this is that an accurate representation of the record? Whatever else the record shows is that an accurate representation of what Casanova said? I believe that the video does not show that there is a weapon pointing at the officer however in Salazar-Ramon v. City of Houston. You're just not going to answer my question? I believe that's an accurate representation. It is an accurate representation. Yes but Salazar-Ramon specifically says at 826 half-third at page 280 we have never required officers to wait until a defendant turns towards them with a weapon in hand before applying deadly force to ensure their safety and that's citing Manis v. Lawson which I'll speak about in a minute as well. Counsel let me make sure I'd kind of like to get you to cover the gram factors and I assume you probably can do that at least some of the more important ones but this is at 120 in the morning and as I understand it from the record and from the video that the officer does not identify himself as law enforcement or a police officer anything like that is that correct? That's correct. He's also shining a light into a bright light into the premises is that correct? He does have a flashlight in his possession shining when he reaches the front door it's shining at an angle as you can see. How do you respond? I think some of the deposition testimony was that the light itself especially in that darkness was blinding. How would the occupants know that it's an officer from the police department as opposed to an intruder at that hour of the night? I think there were earlier events during that evening that indicated that these people in the house knew that the officers were present. Is that in the record though? You're saying there were earlier events and I don't maybe I missed it but I don't recall in the briefs a history of events prior to the perpetrator that the officer believes now may be in the house. What are the earlier events and where can we find those in the record? Yes I believe that officer Casanova when he's speaking to the lady whose husband was punched in the face discloses that he was there earlier and that he had seen two individuals a lady in pink pants and her who was delivering soup at the house right across the street from 217 Roberts where this incident occurred and I believe it was in the police investigation and Casanova's affidavit your honor where he said that he had been at that house and trying to spotlight on the house before the incident totally occurred. Well you said aggressive language other than the vulgarity which unfortunately is all too statement and aggressive language towards someone who he may or may not know as a police officer. That's a good question because I think his body-worn camera shows a sequence of events where he is approaching the front door and he knocks on the door and when it swings open he's greeted in a very calm fashion by Mr. Snowden who tells him what's up and that calm demeanor is consistent with his knock-and-talk investigation which is just to go and talk to the people in the house at that point and officer Casanova immediately responds what's up man you know in a very casual conversational tone. But that assumes that they know that he's a police officer as opposed to somebody who's at the door entering the house for whatever purpose. He doesn't announce his uniform is black or very dark as a corrective officers uniform but he doesn't announce law enforcement or police department or police officer what's up he just shines the light and says what's up. And there's no clear establishment that requires him in a knock-and-talk investigation that does not implicate the Fourth Amendment restrictions because it's neither a search nor a seizure it's just talking to people that he identified himself as a police officer in that process. But I think what his body came clearly shows is when a door opens there is a ceiling light in the living room that is bright and it casts light on him standing at the door six feet away from the occupants and the light is so bright that his shadow is cast behind him on the porch. And so from a reasonable lawsuit standpoint he knows he's dressed in uniform his beanie has the SAPD logo that's reflective he has a shiny badge name tag he's got his gun belt you know he as a reasonable officer is entitled to believe that his presence there is going to be known by these people because the light is shining brightly on him at the front door. And he's engaging in casual conversation with Mr. Snowden at first and it wasn't until a split second that Mr. Snowden suddenly becomes aggressive in his language and he pops up from the sitting position while grasping an object in his waistband and there simply is no clearly established law that an officer has to wait until a suspect pulls a weapon before he can respond to defend himself. Let's get back to the question I asked you earlier at some length the second part of it question was regarding whether the record reflects Casanova testified that when he began firing Snowden was no longer walking toward him and had begun turning toward the rear of the house such that Casanova shot at Snowden from the side. Is that an accurate representation of what we'll find in the record? Yes sir. In accordance with Wilson versus City Ambassador an officer in a situation where a suspect is fleeing the scene is still entitled to use deadly force if the officer reasonably believes that there's a danger to other people from that suspect using a weapon. And what happened when Mr. Snowden begins to move to his right to go to the rear of the house he's clutching this object in his waistband and officer Casanova knows and officer Panez, a body-worn camera video, shows that Panez is behind him and there's a third officer, Officer Garza, who's also in the front yard in the near vicinity so in the case that Snowden is actually in possession of a gun and about to shoot those people are also in danger. So we believe the case of Tucker versus City of Shreveport is clearly applicable in this case because it is a Tucker Tucker versus City of Shreveport. Yes sir. 998, 5th, 3rd, 165. A case from this court in 2021 which shows the proper analysis of Fourth Amendment excessive force claim where video evidence is present and it establishes also in the summary judgment context in qualified immunity that the plaintiff has the burden to clear to point out clearly established law which does not happen in our case. Tucker involved the trial court denying qualified immunity based on video evidence. It saw from the plaintiff's perspective that he was putting his hands behind his back to submit to arrest. However, this Fifth Circuit panel actually disagreed with it amongst itself. There was a two-to-one disagreement and what the video showed but the two members of the panel said from the reasonable officer standpoint the video did show that the arrestee had engaged in a flinch that was construed by the officer as resisting arrest and also disagreed with the trial court and reversed the denial of qualified immunity. This case recognizes that the use of force is an area of the law in which the results depend very much on the facts of each case and thus police officers are entitled to qualified immunity unless existing precedence squarely governs the specific facts at issue. Another case similar to Tucker is Buehler versus Deer again involving video evidence. This is reported at 27 and 4th 969 from last year where various angles of video evidence show the incident and the plaintiff was a so-called police activist, police accountability activist and that he was videotaping Austin police officers as they confronted citizens on 6th Street and the plaintiff claimed that he was complying with the officers instructions to stand back and turn around and submit to arrest but the trial court agreed with the plaintiff from his standpoint but the Fifth Circuit reversed the trial court holding that from the reasonable officers point of view the officer was entitled to believe that was interpreted as resisting arrest because it was evading the officers attempt to place him under arrest and I think that's what these cases stand for your honor is that when the court views the video evidence from a reasonable officers standpoint I think the court will see that he the officer Kasanova does not have to wait till a weapon is pointed at him ready to shoot him dead that he can use reasonable efforts to defend himself when a suspect is reaching for an object normally normally when we when when we decide that the video is dispositive it's because the video contradicts any other kind of deposition testimony or any other assertions and that it's unequivocal but but here you have all these other statements about what happened in the five-second video has to be overwhelmingly conclusive for us to be able to utilize it at the appellate level as opposed to letting letting a fact-finder deciding disputed facts understand your honor what we're saying is the trial court in this instance the materiality of the fact is viewed in that regard by saying brandishing a weapon is not clearly shown on the video it has to be more than that but we we think because of clearly established law in Mannix versus Lawson and Salisbury one versus City of Houston and then more which predated this incident by the way and then more recently Bachecova versus Dohe where the courts have held that officers are entitled to deadly arrest because a suspect makes a sudden movement to indicate to the officer that the suspect is about to retrieve a weapon even though no weapon is ultimately found. Thank you. You've saved time for rebuttal. Mr. Spalding. Thank you, Your Honor. May it please the court. Obviously part of this court's role in this case is limited and the defendant on appeal of an interlocutory denial of a summary judgment is required to be prepared to concede the best view of the facts to the plaintiff and they have clearly refused to do so in this case. There are fact issues all over this case as the district court recognized. This Casanova can enhance his argument on is in fact not clear at all and part of the problem comes from you know officer Casanova took a very specific position when this incident happened and in his affidavit he is very clear that he saw a responding to him drawing that handgun. That's nowhere shown on any of the video on any of the video evidence in this case and so you're right the video evidence is not of the level that you have in Scott versus Harris where it you know it clearly disputes one version of the events versus another. Tell us about the, how you deal with the assertion of a shiny object. Well, you know there was some acknowledgement by the district court at the hearing that he thought there could be something there, there could not be something there and this was based on some enhanced still frames of the, of the video of Mr. Snowden when he stands up. I can't see anything, I don't see anything in the in the video when it's run at full speed certainly of the body cam. There is evidence in this record that that Mr. Snowden had a cell phone but he had it in his pocket. He was wearing khaki pants that zippered pockets so there were there were zippers on these pants but there's no indication one way or the other whether you know any of this indicated the shiny object existed first of all on the video and if it did exist what exactly it was and whether. You would acknowledge, I'm sorry I'm an officer could misunderstand that thinking it's a weapon but it's some other shiny object that the that the officer might be able to respond by. Yeah, I think there I think some of those cases where they've, where somebody makes a move and the officer believes it to be a weapon then that can that can justify the use of deadly force but one of the issues in this case is just the speed at which this happens. I mean this is five seconds and officer Casanova is taking the position today that there was an immediate aggressive move on the part of Mr. Snowden when officer Casanova opened this door unannounced and I think the video reflects that all Mr. Snowden does is get up off the couch when he's addressed by whoever's at the door. Well does it does it show that he reached for his belt or his pocket at the same time that he was getting up? No, it doesn't show that he reached for anything. If anything it shows he's sitting in a seated position with his hands down on his lap and when he gets up those hands remain in that same position and they don't move. They don't move on the video and he takes a step towards the officer Casanova immediately draws his weapon and he draws his weapon and starts firing in conjunction with giving orders to Mr. Snowden to show him his hands. In fact the testimony is that Mr. Snowden nobody in the house ever heard officer Casanova announce show me your hands. All they heard were gunshots. So getting to the grand factors you've got no evidence of it you know that and as the district court recognized the first grand factor is the severity of the crime. They're there to investigate a misdemeanor assault. There was no issue there there was never any allegation that there was a weapon there it was unclear where the assailant was and the district and in fact the officer Casanova's actions themselves are consistent with this not being a very serious crime because he's going up and attempting to conduct a knock and talk. Then you get to whether there was an immediate threat and there's there was never an immediate threat to officer Casanova. What I'm hearing here today is that you know the justification for firing the shots because he was worried about others because he believed that he had a gun in his hand but he's moving away he's clearly moving away from officer Casanova. In fact he's you know when he when Snowden is shot he's shot in the right and left buttocks so he's clearly faced away from officer Casanova and then finally you have whether he was whether there was any resistance and there was never first of all there was never any command given to him that he even would have had the opportunity to resist. So you know the district court took a very careful view of the evidence in this case and it took a very careful review of the video. Did he say show me your hands? Officer Casanova did say show me your hands. That would be a command. Well true but it it has to be a command that you actually are able to respond to. He says show me your hands as he's firing his weapon. I mean it is it is it is that quick so and of course there's testimony in this case that they never heard a command so there was never an opportunity to respond even if he had said it there I mean there there was no the timing is such that he never had enough he would have never had an opportunity to comply with it and even that even the failure to comply with that command doesn't just in and of itself justify the use of deadly force. So with regard to the clearly established prong what case do you think we should look at? I would I would look at Baker versus the one we cited in our brief Baker versus I can never remember the Putnam. Baker versus Putnam and I think you could also look at Poole versus City of Shreveport which is the case we referenced at the at the district court hearing. I mean because both of those deal with the sort of movements that officer Casanova is is kind of relying on or seems to fall back to given a what I seem to what seems to be an implied concession that he did not have a gun he did not have a weapon in his hand and in fact that there there wasn't a weapon in his hand. So I think those two cases demonstrate the clearly established law in this case and you know briefly um one thing I one thing I wanted to address just very briefly outside of the excessive force qualified immunity context is this argument that um Charles Roundtree and Taylor Singleton were not the targets of of his use of force. Everybody in this house was a target of this use of force. He wasn't there to get Snowden. He was there to invest officer Casanova was there to investigate the assault. Snowden didn't match any description that was given to officer Casanova. The only description given to him was that the man had a gray sweater blue jeans and he had no hair and when he shows up he's wearing khaki pants and black hoodie and he's got hair and he's wearing glasses. Officer Casanova testified that when he got to the door he saw everybody in that living room. He knew that Mr. Snowden was there. He knew that Mr. Singleton was there and he knew that Mr. Roundtree was there and so the fact that he may not have intended to seize Roundtree or Singleton doesn't mean doesn't change the fact that he still had a his he was still willful in his use of force on those and in so that so that though that his conduct is still attributable to everyone that's in that living room and gives them all claims for excessive force. This is not like this is not like the case that officer Casanova relies on where you have a training officer who mistakenly shoots another trainer because he thinks that his gun has blanks in it. Counselor, am I correct that the my understanding is that district court didn't get into the Roundtree and Singleton claims separately? It did not. It did not address those separately. It addressed, I mean it obviously granted denied summary judgment on all of those but it addressed the injury, you know, the elements of the excessive force claim with respect to all three of those. So, I think the district court believed that there was they they each had their own fourth amendment claims but it didn't specifically address that that particular issue. So, ultimately you've got fact issues. They're required to accept the plaintiff's version of those fact issues. The district court did that. This court should do the same and this court should affirm the denial and send us back for any further questions. I'll get back the rest of my time. Thank you, Mr. Spalding. Mr. Grinnell for a vote. Going to the gram factors quickly. First, the severity of the crime. The trial court identified the misdemeanor assault. I'm not sure that's true. Casanova's body cam video shows a serious bodily injury to Esteban, Maria's husband, sitting in the car. That would elevate it to a felony but I think the real crime at issue here is when Snowden stands up reaching for an object in his waistband that the officer sees as a nine millimeter gun and that's a felony aggravated assault case against a public servant. In fact, he was tried for felon in possession. You and Mr. Spalding are in disagreement about whether the evidence says that he reached for his waistband. So, where does that come from? Where does it come from? I think the video evidence clearly shows that he raises his hand to his waist and he is grasping an object. Even the trial court recognizes that so I think it goes to video evidence. The second gram factor is whether the suspect posed a danger to the officer or others and I think this is the most compelling factor that weighs in Officer Casanova's favor because he perceived that Snowden was reaching for an object that he saw as a nine millimeter weapon. That is overwhelming consideration alone that just justified Officer Casanova using a defensive reaction. Indeed, if he didn't react, he ran the risk of himself being seriously harmed as well as his fellow officers. The third gram factor is whether the suspect complied or fled the scene and the video clearly shows that Officer Casanova, as soon as Snowden rises and reaches toward his waistband, he tells them show me your hands. He's not shooting at the same time. He says show me your effing hands clearly on the audio portion of his body-worn camera and then he fires two rapid succession rounds because Snowden does not stop. He does not raise his hands. He continues to retreat to the back of the house. The clearly established law, the appellees are referencing Baker v. Huttle and Alvis, the city of Shreveport. He was shot through the buttocks and he turned. The fatal shot hit him where? The fatal shot, as Snowden is moving to his right, he crosses in front of Miss Singleton and then Mr. Roundtree. The second shot lands in Mr. Roundtree's chest and that's the fatal shot. The shot that killed him was directly in his chest. That's correct and it's obvious that Mr. Casanova's intended target is Snowden. The other two, Singleton and Roundtree, on his body-worn camera video do not make any threatening language recitations or bodily movements to indicate that they are threatening the officer at the front door. Baker v. Huttle and Alvis over city of Shreveport involve factual situations where the suspect poses no threat to the officer. In fact, the trial court also cited Tennessee v. Gardner, which is the same proposition. The suspect fleeing the officer that poses no threat to the officer does not justify the officer using deadly force in response. Baker v. Huttle is not a video evidence case. It relies on the typical summary judgment standards on evaluating a material fact dispute and eyewitnesses submitted a testimony that the suspect was not a threat to the officer and in fact did not even see the officer when the officer discharged his weapon. And the court recites even that the four gunshot wounds to the suspect, the location of those wounds indicated that the suspect was not the officer at the time of the shooting. I think that this court in recently, before I get there, I think that I'd like to point to this court to evidence that is very material in this case. It's just found in the record at beginning at page 2155. It's Exhibit D2. It's his video rapidly, or you can stop on any selected screen. And the screens at issue here are 938 through 1105 in the record. And what those screens show is that when Officer Casanova approaches the front door, his weapon is holstered and it remains holstered until Snowden stands up and becomes a threat to him. It also shows the lights showing on him. It shows Pata behind him. It shows Officer Garza also in the front yard to indicate that he could also protect his fellow officers in the event Snowden began to shoot his weapon. This court in Feliz versus Garza. Let me read the quote. Foundational to our qualified immunity doctrine is the concept that we must view an officer's actions from that officer's point of view without the benefit of hindsight. From the comfort of a courtroom or chambers, it is often possible for a judge to muse on how an officer could have handled the situation better. But that does not mean the officer is not entitled to qualified immunity. In this case, we cannot say that the officer violated clearly established law when we view the events from the officer's point of view at the very moment that they acted. Close quote. I think that's what our case is about. Thank you. Thank you, Mr. Bernal. Your case and all of these cases are under submission.